Good morning, Your Honor. James Holland for Plaintiff Appellant Kevin Kaye. It is plaintiff's position that fundamentally, during this encounter between him and the federal law enforcement officers at the Naval Base Ventura County, defendants escalated this encounter, which had been verbal only initially, by resort to the use of force. And the question presented fundamentally is whether their resort to that use of force was justified under the circumstances. It is plaintiff's position that their resort was not so justified. Once the commander of the defendants, Lt. Easley, realized that my client was holding a flashlight in one hand and a cell phone in the other hand, there should have been a realization that there was no immediate threat posed to these officers. That any claim that he was pulling a weapon out of a pocket is contradicted by realization that this is in fact a flashlight and a cell phone. My client was not fleeing, but had rather stopped his vehicle as soon as he had realized that it was law enforcement officers that were behind him. He was complying with their orders, albeit slowly. He was nevertheless complying. And ultimately there was no oral... Do you think he provoked their response? If he did so, Your Honor, it was simply by... He doesn't exude a lot of sympathy. Indeed. Indeed. If he provoked it... Would that make any difference? That he does not evoke sympathy? Well, that his use of words and, you know, he was kind of foul-mouthed and he was insulting. He used some racial slurs. Does any of that make any difference? It would tend to make the defendant's reaction a personal reaction on their part. They're offended by his use of language. They are personally insulted. They take it upon themselves at that point, let's escalate this thing and I will show you, or words to that effect. Rather than the military purpose assertively which prompted them to act in the first place. It takes it to a completely different motive on the defendant's part if their reaction is simply to the use of his inappropriate language, if you will. So what do you contend, where do you contend the district court made a fundamental error? Well, it... The district court said on the merits that on the merits there was no excessive force. The police, the officers didn't use excessive force. This is a matter of law. There was no constitutional violation here under all these circumstances because it was an evolving situation that was getting out of hand. Fundamentally, that's accurate. In coming to that conclusion, however, the district court erred in assuming facts asserted by the defendants that were controverted by plaintiffs. Well, isn't that really the problem in this case, that there were a number of disputed facts and the judge decided them and this is summary judgment? Indeed, Your Honor. So your fundamental argument should be that the proper standard for summary judgment wasn't applied. Thank you. In a couple of specific instances, if I may, the district court found that my client had attempted to drive his SUV away from the scene where it had been parked. In fact, the uncontroverted evidence shows that he had stopped in response to defendants first turning on their red lights and his realization that it was in fact law enforcement that was behind him rather than potential thugs out to accost him in this lonely area out by the Missile Park. The district court also found that my client said bang when he pulls the flashlight out. That's a controverted fact that's found against plaintiffs in that regard. The district court also found that it was a normal handcuffing procedure, a fact which plaintiff controverts as well. You know, I used to try these cases, as I'm sure my colleagues here did too, in these 1983 cases. Isn't there some kind of, I don't know if it applies in this case or not with respect to the military, but isn't there some kind of manual or body of law that talks about what level of force is permitted at what level of activity by the defendant or the plaintiff in this case? Indeed. And in opposing the summary judgment, we did offer some excerpts we thought relevant to that point, mandating that only the minimum amount of force necessary under the circumstances is to be employed. And could they have just pepper sprayed him or something? Would that have been appropriate? I mean, what level? I didn't get enough information from this. What level of his threat, just by what level of their reaction? Given the circumstances that defendants knew, that a client did appear intoxicated, that he was responding and complying with their orders, albeit slowly, I would add somewhat confused orders at times. Get near your vehicle, get away from your vehicle, and so on. That defendants immediately escalated this thing to jumping in and putting their hands on him. There's no proof that is uncontroverted, that there was any kind of an oral order, put your hands behind your back, you know, take your coat off, we're going to give you a pat down here to make sure you have no weapons. There's no information indicating that he ever got any warning that this was coming. Rather, there's simply a nod or a gesture on the part of Lieutenant Easley, and he is jumped upon by several officers. And so it's our position fundamentally that this was an unnecessary escalation of force to the point of being physical, that it did not have to get to that level in the first place. Counsel, as I understand it, the primary injury that Mr. Kenny suffered was the undisplaced fracture of his ankle. The defense offered medical evidence that that could not have occurred from a kick or a blow. Do you concede that? Do you concede that the ankle had to have been sprained as he twisted and fell? Broken, Your Honor. Broken, Your Honor. Not sprained, but broken. Yes, after having done some investigating myself, we did and do concede that that was not the result of a blow to the back of his leg. Nevertheless, we still do have the photograph of the bruise, rather distinct bruise, in the lower leg area above the area where his ankle was broken, looking a whole lot like a boot mark. We have Mr. Kenny's testimony that as he is going down, he hears Lieutenant Easley say, oh yeah, I'll show you, or something to that effect, and then feels a blow to the back of his leg. In addition, however, we also have the injuries to the hands. The defendant's version would place my client next to one of the tires of his vehicle parked there  However, when you look at the versions of the defendants together with my client's own declaration in opposition to summary judgment, you find that he at some point ends up ten feet away from this place where they all go down onto the ground. Defendants have offered no explanation whatsoever as to how he got out there in a handcuffed position while he's unconscious. Counsel, as I understand it, after the events that you've discussed, and when the California Highway Patrol arrived, there was a discussion with Mr. Kenny, a decision was made by the Highway Patrol to re-handcuff him, and he significantly resisted, kicked, and fought with them at the time. You do not contest that, do you? We don't contest that he did resist a bit. Some of the specifics of it, he ended up over the car hood, as I recollect it, being asked to move forward, and yet having some difficulty doing so on a broken leg. He didn't sue the Highway Patrol. He did not. He did not. All right, Counsel, you're over your time. Thank you very much. May it please the Court, I'm Assistant United States Attorney Robby Montalioni. I represent the appellees, Stanley Bass, Willie Easley, David Ehar, and Jonathan Turner, each of whom is sued in his individual capacity here. The District Court's order granting summary judgment on grounds of qualifying on immunity should be affirmed in favor of each of the appellees, because the evidence does not show that any of the appellees violated Mr. Kenny's constitutional rights, either by detaining him or by using force to handcuff him during the detention. Specifically, the evidence, when viewed in Mr. Kenny's favor, based on Mr. Kenny's testimony, shows a struggle to handcuff Mr. Kenny rather than any gratuitous use of force, and confirms that his ankle injury was caused by his fall during that struggle to be handcuffed and to resist being handcuffed. What about counsel's suggestion that there is a clearly marked bruise consistent with a kick, independent of the ankle fracture? There was no evidence that that type of bruise was or could have been or was only caused by a kick. There was only Mr. Kenny's unsupported testimony. That, to him, the bruise that he photographed ten days after the incident looked like a boot to him. There was not even any evidence that any of the appellees were wearing the type of boot in question. Moreover, he --- Did the plaintiffs offer any medical evidence at all in opposition to the motion for summary judgment? No, Your Honor. In addition, even had Mr. Kenny submitted evidence that the bruise was consistent with a boot mark, it would not establish excessive force, since, according to Mr. Kenny's own testimony, what occurred was two officers pulled at his arms to try and handcuff him, one officer shoved his right side or right shoulder during the handcuff struggle, he fell over, he brought down at least one officer with him, someone fell on top of him, and he felt a strike as something or someone struck his leg. Under his own testimony, therefore, the bruise could have been caused by someone falling or stepping on him accidentally during the fall, which was caused by his resisting the handcuffing. He concedes that he knew the officers were attempting to handcuff him. And instead of putting his hands behind his back, he kept pushing and pulling his hands forward in front of his body so that the officers had to use force on his arms and shoulders in order to get him handcuffed. Is it your contention, counsel, that injuries accidentally received in the context of being handcuffed cannot be excessive force, that excessive force requires intentional acts leading to intentional results or intended results? Not necessarily, Your Honor. There could be a circumstance in which someone was handcuffed for the force in being handcuffed in which it was unreasonable under the Constitution to handcuff anyone at all or to use any force at all to handcuff someone. And under those circumstances, should there be a resultant injury, there could be an excessive force claim. Even if the injuries themselves were accidental or unintentional? The force would not then be the application of the accident. The force would be the application of the handcuffs themselves, which resulted in injury, which was accidental. In this case, it was not unreasonable to make the decision to handcuff Mr. Kenney when he was being provocative and irrational and unpredictable. It was the safest thing for everyone's, under the circumstances for everyone's concern, to have undisputed control over the suspect, to put him in handcuffs so that there could be no question of whether or not he was reaching for a weapon or doing anything else dangerous. He disputes the officer's version of how the handcuffing even took place. There are minor differences in the ---- Well, there are major differences, aren't there? I don't believe so, Your Honor. The differences are in whether or not ---- You say that Sergeant Bass took hold of Kenney's left arm. Yes. He says two defendants grabbed both Mr. Kenney's arms. Right. He did not know which officers grabbed his arms. You say Kenney resisted and attempted to pull away, disputed. Mr. Kenney covered his face with his hands to protect himself. He disputes intention and motive. He says, I wasn't trying to resist being handcuffed. I was trying to pull my hands to get them in front of my face. There's no question about what he did. You say during the struggle, Kenney lost his balance and fell to the left. He disputes that. Mr. Kenney did not fall. Well, he admits that he fell. He disputes the characterization as to whether it was a losing act. Does that make a difference? It does not, Your Honor. Why not? It's not material to whether or not the actions of the police was unreasonable force under the Fourth Amendment. Mr. Kenney disputes motive, their motive, his motive. But to make a determination of qualified immunity, the Court has to determine whether viewing the evidence in Mr. Kenney's favor, and, again, the evidence, not the conclusions, the allegations, or the theories, whether that evidence shows that. Well, isn't Mr. Kenney's testimony evidence, just as the four police officers' testimony is evidence? Absolutely, Your Honor. And isn't this really, a lot of it, there's medical records and photographs that support both sides' versions and don't support both sides' versions. It's kind of a credibility contest between, and it is four against one. So he has kind of a laboring or, but to me, the things like the nature of the force, the reasonableness of it, and the escalating response, a lot of this is something that goes off on who you believe. Which version of the story you're going to believe? Your Honor, there is no credibility determination which is necessary to determine the application of qualified immunity in this case. The reasonableness of the force under the Constitution, the objective reasonableness of the force is a legal determination. The facts that are in dispute are minor. The major material facts are conceded by both parties. The application of force to both arms. The application of force to the right shoulder. The fact that as they were struggling over the handcuffs, he fell to the left. The fact that someone fell on him. What about the nature of the force, and what about the cause of the injuries? The cause of the injury is undisputed. The injury, as Mr. Holland just stated, was caused by a twisting and bending as he fell to the left. That was the fracture. The fracture. What about the boot mark? Well, there is no evidence there is a boot mark. There is a bruise to his leg. There was no medical evidence of whether or not that bruise was caused because of the ankle fracture, because of the twisting of the flesh, whether it was caused by someone falling on him. There was absolutely no evidence of what that was caused by. But even if there had been some evidence that it could or was caused by a boot mark, that would not be evidence of excessive force, since everyone agreed that the defendants fell. They all basically, there was a tumble of bodies falling down. Therefore, even if there were a boot mark, it could have been an accidental injury. Mr. Kenney admitted he did not see anyone kick him. He fell to the ground. Excuse me, Counsel. There seems to be a misapprehension as to the summary judgment standard, right? Your clients moved for summary judgment, right? Yes, Your Honor. What's Mr. Kenney's burden after your clients moved for summary judgment? I'm sorry, Your Honor? What is Mr. Kenney's burden after your clients moved for summary judgment? To produce evidence. More than a scintilla of evidence, right? Not prove his case. Just more than a scintilla of evidence. Enough evidence that a reasonable jury could find that one of the appellees violated his constitutional rights and took actions which were so clearly unlawful that a reasonable officer in that officer's position would have known he was violating the Constitution. There was no evidence of that kind, crediting all of Mr. Kenney's testimony. There was no evidence upon which a reasonable jury could have found that any of the appellees violated Mr. Kenney's constitutional rights, either in detaining him or in using force to apply the handcuffs. There was no evidence of gratuitous force. There was no evidence of force after he was handcuffed. All of the evidence, including Mr. Kenney's own testimony, was evidence of a struggle over handcuffs and a fall which resulted from that struggle. There was nothing upon which a jury could have found a violation of constitutional rights by any of the individual defendants. And even if the evidence had been sufficient to show any violation of constitutional rights, the law regarding restraining a drunk driver outside of a military base and the law regarding the amount of force which can be used to apply handcuffs to a resisting suspect was not so clearly established that any of the appellees would have known that their own particular conduct in applying those handcuffs in restraining Mr. Kenney was a constitutional violation. So even if there had been evidence sufficient to show a constitutional violation, the Court's decision granting summary judgment should still be affirmed under the second prong of saucier, under the second prong of the qualified immunity analysis. I have nothing further, Your Honor. All right. Thank you very much, counsel. All right. Kenney v. Easley will be submitted.
judges: Wardlaw, Paez, Singleton